IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**OREGON BUREAU OF LABOR AND**
**INDUSTRIES** ex rel **JOY MAYORGA**,

        Plaintiff,

and,

**JOY MAYORGA**,

        Intervenor,

   v.

**HOUSING AUTHORITY OF DOUGLAS**
**COUNTY**,

        Defendant.

_____

**Civ. No. 6:13-cv-01205-MC**

**OPINION AND ORDER**

**MCSHANE, Judge**:

    Rosewood Homes is public housing owned and operated by defendant, Housing

Authority of Douglas County (HADCO). Plaintiff intervenor, Joy Mayorga, is a disabled

individual[1] who has lived at Rosewood Homes since 1996. In 2008, Mayorga received

permission to bring home a service animal, Asia, which exceeded HADCO's pet weight and size

restrictions. Shortly after, Mayorga requested to fence off a kennel area adjacent to the back of

her housing unit to better enable her service animal to exercise and relieve itself. HADCO denied

this initial request, but subsequently asked Mayorga to submit a medical release to acquire

---

[1] Mayorga suffers from degeneration of the lumbar disk, facet osteoarthritis and fibromyalgia. Decl. of Fred Black, M.D. 2, ECF No. 39. Mayorga's condition confines her to bed for five to seven days each month; sometimes confining her for consecutive days. *Id*.; *but see* Decl. of Joy Mayorga 2, ECF No. 42 (indicating that Mayorga is bedridden for "days" "several times a year").

additional information about Mayorga's need for the kennel. Mayorga refused to sign the release, which HADCO later acknowledged was unduly broad. In 2009, Mayorga resubmitted her request for the kennel, which HADCO again denied. In 2010, Mayorga filed an administrative complaint against HADCO with plaintiff, Oregon Bureau of Labor and Industries (BOLI). In 2013, BOLI filed the current action in state circuit court, which was later removed to this Court.

This Court is asked to consider: (1) whether HADCO denied Mayorga a reasonable accommodation under the Fair Housing Amendments Act (FHAA), 42 U.S.C. §§ 3601–3619,[2] Section 504 of the Rehabilitation Act (Section 504), 29 U.S.C. § 794, and ORS § 659A.145; (2) whether HADCO engaged in an interactive process with Mayorga under the FHAA; and (3) whether HADCO made an impermissible medical inquiry under the FHAA, 42 U.S.C. § 3604, and ORS § 659A.145, OAR 839-005-0220. Because the record before this Court is largely inadequate and would benefit from fuller development at trial, this Court is unable to determine whether HADCO denied Mayorga a reasonable accommodation and/or failed to engage in an interactive process with Mayorga under the FHAA, Section 504, and ORS § 659A.145. Thus, defendant's motion for summary judgment, ECF No. 36, is GRANTED IN PART and DENIED IN PART, plaintiff intervenor's motion for partial summary judgment, ECF No. 37, is GRANTED IN PART and DENIED IN PART, and plaintiff's motion for summary judgment, ECF No. 44, is GRANTED IN PART and DENIED IN PART.

## PROCEDURAL AND FACTUAL BACKGROUND

---

[2] Under the FHAA, "Congress extended the [Fair Housing Act's] protection to handicapped persons." *United States v. Cal. Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1416 (9th Cir. 1994) (Mobile Home I).

2 – OPINION AND ORDER

This action arises out of alleged disability discrimination in a disability accommodation/modification[3] denial. In 1996, Joy Mayorga began living at Rosewood Homes. Def.'s Mot. Summ. J. 6, ECF No. 36-2. Rosewood Homes consists of single-story duplex residences, separated by common grassy areas shared by all residents of the complex. *Id*. at 73; *id*. at 3–7, ECF No. 36-3. Each individual unit has a concrete patio, approximately 9 feet by 20 feet, directly adjacent to the back of the building accessed by a sliding glass door. *Id*. at 3–7, ECF No. 36-3; Decl. of Stephanie 54, ECF No. 45-1.

In a letter dated March 26, 1997, Mayorga first requested permission to "fence in her back yard," "plant a garden," and "plant some shrubs."[4] Def.'s Mot. Summ. J. 27, ECF No. 36-1. Mayorga's request was not associated with her disability. *See id*. at 46–48, ECF No. 36-2. This request was denied. *Id*. at 47.

In a letter dated January 12, 2005, Mayorga sought permission to obtain a service dog that would exceed HADCO's pet weight and size restrictions. *Id*. at 21, ECF No. 36-1. Mayorga indicated that she would "try and get a dog that meets the physical, mental, and also the temperament and attitude requirements necessary for the dog to be trained as a service dog." *Id*. Mayorga included a letter from her doctor, Fred Black, MD PC. *Id*. at 21–22. In that letter, Dr. Black opined that "living with and caring for a dog would be beneficial for Ms. Mayorga's health. It is my recommendation that she have a large, very sturdy dog that is at least eight months old." *Id*. at 22; Decl. of Stephanie Parent 52, ECF No. 45-1.

---

[3] "Under the [FHA], a reasonable modification is a structural change made to the premises whereas a reasonable accommodation is a change, exception, or adjustment to a rule, policy, practice, or service." Joint Statement of the Dep't of Housing & Urban Dev. & the Dep't of Justice, *Reasonable Modifications Under the Fair Housing Act* 6 (March 5, 2008) (Joint Statement 2008).
[4] This request did not indicate the dimensions of the proposed fence.

3 – OPINION AND ORDER

In a letter dated February 24, 2005, Rebekah Bassett, HADCO's public housing representative, authorized Mayorga to have a dog for medical reasons. Def.'s Mot. Summ. J. 23, ECF No. 36-1.

In a letter dated May 18, 2005, Janeal Kohler, HADCO's public housing manager,[5] instructed Mayorga to "remove the fence from around [her] patio." *Id*. at 18.[6]

Sometime in 2006, during a Resident Advisory Board meeting, Mayorga again asked for a fence. *Id*. at 53, ECF No. 36-2. Mayorga's request, which was not associated with her disability, was denied. *Id*.

On September 11, 2006, Dr. Black opined that Mayorga was incapable of taking her trash can to the curb because of her disability. Decl. of Fred Black, M.D. 5, ECF No. 39. This restriction was faxed to Roseburg Disposal, but was not sent to HADCO. *Id*.

In an email dated August 4, 2008, Mayorga notified Kohler that she had found a possible service dog. Def.'s Mot. Summ. J. 24, ECF No. 36-1. Mayorga requested permission to bring the dog, which exceeded HADCO's weight and size restrictions, into her home for a trial period prior to purchase. *Id*. The sought dog, an American Staffordshire Terrier,[7] also referred to as a Pit Bull, *see id*. at 90, ECF No. 36-2, was five-years old, weighed approximately 60 pounds, and

---

[5] Kohler's position later changed to property management director.
[6] This letter provided, in relevant part:

> On April 27, 2005, you requested to place some lattice on the corner of your patio for support for some flowers (see attached memo). You specifically said you were not fencing in your patio, you simply wanted an "L" shape for your flowers on the corner of your patio. Please remove the fence from around your patio.

*Id*.
[7] The American Kennel Club distinguishes between the American Staffordshire Terrier and the Staffordshire Bull Terrier. *See* AMERICAN KENNEL CLUB, AMERICAN STAFFORDSHIRE TERRIER: BREED STANDARD , *available at* https://www.akc.org/breeds/american_staffordshire_terrier/breed_standard.cfm. Both breeds, however, are commonly referred to as Pit Bulls. *See* Def.'s Mot. Summ. J. 90, ECF No. 36-2; *see also* AMERICAN KENNEL CLUB, WOOFIPEDIA, http://www.woofipedia.com/discover/breeds/american-staffordshire-terrier (last visited Sept. 25, 2014) (indicating that the American Staffordshire Terrier and the Staffordshire Bull Terrier were originally bred as fighting and baiting dogs).

4 – OPINION AND ORDER

had received no training,[8] *id*. at 27, 29; *id*. at 26, ECF No. 36-1. Mayorga received the dog,

named Asia, from her Grandson at no cost. *Id*. at 25–26, ECF No. 36-2.

In an email dated August 5, 2008, Kohler informed Mayorga that Kohler needed a signed

pet policy and verification of vaccination and licensing. *Id*. at 24, ECF No. 36-1. Mayorga, in

response, indicated that she would pick up the paperwork. *Id*.

In an email dated August 18, 2008, Mayorga asked permission to bring the dog into her

home prior to getting the paperwork from the dog's owner. *Id*. at 25. Mayorga noted that the dog

had been spayed and was current with her shots. *Id*.; *but see* Decl. of Stephanie M. Parent 46,

ECF No. 45-3 (indicating that Mayorga thought Asia "was in the process of getting spayed" at

this time).

In an email dated August 19, 2008, Kohler reiterated her need for verification of

vaccination and licensing. *Id*. Kohler instructed Mayorga not to bring the dog onto the property

until this documentation had been provided. *Id*. Later that day, Mayorga submitted a signed pet

policy. Decl. of Peter L. Fels 1–2, ECF No. 38-1.

In an email dated August 26, 2008, Kohler confirmed that Mayorga was approved to

bring the dog into her home. Decl. of Stephanie M. Parent 5, ECF No. 45-2.

In an email dated August 27, 2008, Mayorga sought permission to fence off a kennel area

for her dog. Decl. of Stephanie M. Parent 7, ECF No. 45-1.[9] The following day, Mayorga sent

---

[8] The record indicates that Mayorga was a "professional dog trainer." *Id*. at 27, ECF No. 36-2. However, Mayorga had no experience training service animals. *Id*.

[9] That email provided:

> I would like to build a kennel area for my dog. I would like permission to fence off the area from the Southwest corner of my unit across my patio, down the length of the patio, approximately 12 feet beyond the length of the patio and over to the building. Most of the dog's area would be on the patio with a bit of grass area for her.

Decl. of Stephanie M. Parent 7, ECF No. 45-1.

Kohler two emails. In the first, Mayorga informed Kohler that Mayorga had the opportunity to acquire the necessary materials for little or no cost, but only for a short time period. *Id*. at 2, ECF No. 45-2. In the second, Mayorga clarified that her request was a disability accommodation. *Id*. at 8, ECF No. 45-1.

In an email dated September 2, 2008, Kohler notified Mayorga that Mayorga would "receive a response to [her] request within fourteen days from the date of [her] request." *Id*. at 2, ECF No. 45-2. Kohler also asked whether Mayorga would be available the following day to mark out the requested dimensions on the property behind Mayorga's unit. *Id*.

In an email dated September 10, 2008, Mayorga inquired about the status of her original request. Decl. of Peter L. Fels 2–3, ECF No. 38-14.

In a letter dated September 11, 2008, Kohler approved Mayorga's use of a portable dog kennel. Decl. of Stephanie M. Parent 5, ECF No. 45-1. Kohler indicated that the kennel needed to be limited in size (e.g., 36 inches by 16 feet in length), taken down when not in use, and must not be attached to the building or concrete. *Id*. at 5–6.

In an email dated September 12, 2008, Mayorga indicated that the approved kennel did not meet her needs. *Id*. at 9. Mayorga also noted that the kennel did not provide sufficient exercise space for her dog and was prohibitively expensive. *Id*.

In an email dated September 13, 2008, Mayorga reiterated that the portable dog kennel did not meet her needs. *Id*. at 7, ECF No.45-2. Mayorga further elaborated that "just letting the dog outside for fresh air, exercise and some 'off duty' time can present physical problems. That is why a space such as I requested is a large help to the disabled owner as well as the dog's well being." *Id*. Mayorga then requested reconsideration of her initial request.

In a letter dated September 15, 2008, Kohler denied Mayorga's request for a larger kennel. *Id*. at 9. Kohler suggested three alternatives: a third-party animal walker, a more suitable assistance animal, and a temporary tether. *Id*. at 8. Kohler also noted that Mayorga's request would infringe upon common space and expressed concern regarding injuries to third-parties. *Id*.

On or about September 23, 2008, Kohler and Dolly Newman, HADCO's executive director, met with Mayorga at her unit and measured the dimensions of her proposed fenced off kennel area. *Id*. at 22, ECF No. 45-3; *see also id*. at 12–13, ECF No. 45-1. Also on that date, Mayorga provided defendant with a diagram showing her suggested fenced off kennel area. *Id*. at 54, ECF No. 45-1. This area included the concrete patio directly behind the home and a grass area approximately 9 feet by 15 feet. *Id*.

In a letter dated September 29, 2008, Kohler sent Mayorga a medical release form in order to "obtain information from Dr. Black regarding [her] request for a reasonable accommodation." Decl. of Stephanie M. Parent 10, ECF No. 45-1. That release provided, in relevant part:

> In connection with my eligibility for housing occupancy, I (we) hereby authorize the Housing Authority, its officers, employees, and designees to access any and all information pertinent to my (our) occupancy from employers, public, and private agencies, individuals, previous and current landlords, financial institutions, and services such as: MIS, Services to Children and Families, Social Security Administration, etc. I (we) further agree to hold harmless and save the Housing Authority from any liability resulting from such exchange of information.
>
> This information is being exchanged with:
>
> Fred Black, MD PC

*Id*. at 11.

In a letter dated October 21, 2008, Kohler requested that Mayorga complete and return the medical release form if she was not satisfied with the initial kennel approval. *Id*. at 12.

In an email dated October 22, 2008, Mayorga disputed whether the initial kennel approval accommodated her disability and argued that the requested medical release form was unlawful.[10] *Id*. at 14.

In a letter dated October 21, 2008, but received October 24, 2008, Suzy Hartman, DVM, and Rasha Van Beek, practice manager at Companion Animal Clinic, recommended that "for the health and well being of 'Asia' that [Asia] has an area where she can be off leash so as to be able to exercise yet be safe and secure." *Id*. at 6, ECF No. 45-2.

In an email dated October 28, 2008, Kohler acknowledged Mayorga's disclosure concerns and indicated that she would provide a more tailored release by October 30, 2008. *Id*. at 13.[11] That same day, Mayorga responded in an email that she had "already contacted [her] Doctor and asked him to send appropriate information to you." *Id*. at 13, ECF No. 45-1.

---

[10] That email provided, in relevant part:

> I was not aware there was any time deadline as to when these documents needed to be returned to you. The document you want me to sign is a release by me to you of my medical records. After much research I believe the document you require of me to be both an illegal and inappropriate request (actually demand seems to be the more fitting word). Although you may cho[o]se to consider [the] request a closed matter, I do not. I am hoping we will be able to reach a reasonable solution to this matter.

*Id*. at 14.

[11] That email provided, in relevant part:

> I understand your concern over your medical records. I have been researching forms to better specify what needs to be verified with your physician. I would like to reassure you we are only needing to verify the need for your request in connection with your disability . . . .
>
> The form I found is from another agency so I need to re-type it. I will have the form ready by Thursday, October 30, 2008 and our office opens at 9:00am. If I can get it ready before then I will contact you. Would you like to pick it up, have it e-mailed, or mailed?

*Id*. at 13.

8 – OPINION AND ORDER

In a letter dated October 27, 2008, but received October 31, 2008, Dr. Black elaborated on Mayorga's need for a fenced off kennel area. That letter provided:

> My patient Joy Mayorga, has given me permission to share the following information with you. Ms. Mayorga explained to me that she needs this letter from me because she has requested to be allowed to fence off an area for her service dog (which I had previously prescribed for her) thus allowing the dog to go outside on it's own.
>
> Because of her disability she has days when she can barely walk. Days when she even has to spend most of her day in bed. There is no way to determine when she will have such days nor how long they will last. At times this situation will interfere with her ability to take the dog out on a leash, even just long enough for the dog to relieve itself. She also has other health conditions that would be negatively affected by not allowing the accommodation she is requesting. All in all, I feel the best solution for Ms. Mayorga to keep and maintain her dog, is to allow her to be able to just open the door and let the dog out.
>
> With regard to the dog's health, I can only say that because of the slow rate of Ms. Mayorga's walking, the dog will receive very little exercise. Other th[a]n that I am not in a position to speak to the dog's well being – only Ms. Mayorga's. For her sake, I hope something can-be worked out that will allow Ms. Mayorga to keep her service dog.

*Id*. at 15.

In a letter dated November 3, 2008, Kohler informed Mayorga that her request for a fenced kennel area was denied because: (1) she refused to provide written permission for physician verification; (2) a temporary tether accommodated her request; (3) a third-party animal walker accommodated her request; and (4) her request, if granted, might result in injuries to third-parties because of inadequate supervision. *Id*. at 16–17. Kohler also noted that HADCO had informed Mayorga that it had received "two different reports from HADCO employees of [Mayorga's] female pit-bull acting aggressive towards them." *Id*. at 16.

In an email dated November 18, 2008, Mayorga informed Newman that the prior letter from Dr. Black "fully explained the relationship between [her] request for the kennel area and

9 – OPINION AND ORDER

[her] disability needs." *Id*. at 18. Mayorga also indicated that "there is little need for me to meet with [Kohler]. You have all the information available to you." *Id*.

In a letter dated December 23, 2009, Mayorga resubmitted her accommodation request to Tonya Ianuzzo, HADCO's public housing manager. *Id*. at 19. That request included Dr. Black's previous October 2008 letter. *Id*.

In a letter dated January 6, 2010, Ianuzzo denied Mayorga's request for a larger fenced area, but noted that defendant had "received a letter from [Mayora's] physician and [defendant] [did] not need a further release form." *Id*. at 20; *see also id*. at 1, ECF No. 45-2 (In a letter dated January 19, 2010, Ianuzzo affirmed her letter dated January 6, 2010).

In February 2010, Mayorga filed an administrative complaint against defendant with the United States Department of Housing and Urban Development and BOLI. BOLI investigated the complaint and subsequently issued formal charges against HADCO and three individuals for violations of ORS § 659A.145 and the FHA, 42 U.S.C. § 3604. HADCO thereby exercised its rights under ORS § 659A.870; electing to have the matter heard in state circuit court.

On September 22, 2011, the HADCO Board of Commissioners approved a motion directing Jamie Ambrosini, HADCO's section 8 director, "to obtain bids for a vinyl fence." *Id*. at 69, ECF No. 45-1. This approval included a budgetary allocation of $2,500 subject to upward modification upon additional board approval. *Id*.

Sometime between September 22 and 29, 2011, Ambrosini, Kristy Carroll, HADCO's public housing director, and a contractor arrived at Mayorga's unit to take measurements and provide a bid for a possible vinyl fence. *Id*. at 5–7, ECF No. 45-3. Mayorga briefly engaged the contractor in conversation and expressed concerns about the use of vinyl. Decl. of Joy Mayorga

3, ECF No. 42; Decl. of Stephanie M. Parent 6, ECF No. 45-3 ("I remember Joy opposing vinyl.").

In an email dated September 29, 2011, Mayorga asked Ambrosini when the fence would be installed. *Id.* at 27, ECF No. 45-1. HADCO did not respond to this email.

In May 2013, BOLI filed a complaint on Mayorga's behalf against HADCO in state circuit court. In July 2013, HADCO removed that action to this Court. In November 2013, Mayorga intervened as a plaintiff in her own right.

BOLI and Mayorga now seek injunctive and equitable relief, civil penalties, and damages under the FHA, 42 U.S.C. § 3604, Section 504, 29 U.S.C. § 794, and ORS § 659A.145.

**STANDARD OF REVIEW**

This Court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

**DISCUSSION**

This Court is asked to consider (1) whether HADCO denied Mayorga a reasonable accommodation under the FHAA, 42 U.S.C. §§ 3601–3619, Section 504, 29 U.S.C. § 794, and ORS § 659A.145; (2) whether HADCO engaged in an interactive process with Mayorga under the FHAA; and (3) whether HADCO made an impermissible medical inquiry under the FHAA, 42 U.S.C. § 3604, and ORS § 659A.145, OAR 839-005-0220. This Court addresses each question in sequence.

## I. Reasonable Accommodation

BOLI and Mayorga contend that HADCO denied Mayorga a reasonable accommodation and a reasonable modification under the FHAA, 42 U.S.C. § 3604, and ORS § 659A.145. In addition to these claims, Mayorga also independently contends that HADCO denied her a reasonable modification under Section 504, 29 U.S.C. § 794. Because the parties stipulate[12] that analysis under ORS § 659A.145 and Section 504, 29 U.S.C. § 794 is substantially equivalent to analysis under the FHAA, this Court proceeds using the FHAA framework. *See also Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1149 (9th Cir. 2003) (relying on the Rehabilitation Act to interpret "accommodation" under the FHAA); *Fishing Rock Owners' Ass'n, Inc. v. Roberts*, Case No. 6:12-CV-00754-AA, 2014 WL 1096246, at *5 n. 1 (D. Or. Mar. 18, 2014) (concluding that analysis under the FHAA applies to claims under ORS § 659A.145).

The FHAA prohibits discrimination against disabled[13] persons "in the terms, conditions, or privileges of . . . a rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of . . . . that person." 42 U.S.C. §

---

[12] *See* Def.'s Mot. Summ. J. 20 n. 7, ECF No. 36; Pl. Intervenor's Mot. Partial Summ. J. 36–38, ECF No. 37; Pl.'s Mot. Summ. J. 13 n. 6, ECF No. 44.
[13] This opinion uses the terms "disability" and "disabled," except when referring to the FHAA's statutory language. When used, the terms "handicap" and "handicapped" have interchangeable meaning with "disability" and "disabled." *See Giebeler*, 343 F.3d at 1146 n. 2.

3604(f)(2). Such discrimination encompasses a refusal to permit reasonable modification, 42 U.S.C. § 3604(f)(3)(A), and a refusal to make reasonable accommodation, 42 U.S.C. § 3604(f)(3)(B).[14]

    To establish a discrimination claim under the FHAA for a failure to reasonably accommodate, Mayorga must demonstrate that: (1) she suffers from a handicap as defined by the FHAA; (2) HADCO knew or reasonably should have known of Mayorga's handicap; (3) accommodation of the handicap may be necessary to afford Mayorga an equal opportunity to use and enjoy the dwelling; and (4) HADCO refused to make such an accommodation. *Giebeler*, 343 F.3d at 1147 (citation omitted). Because HADCO stipulates that Mayorga is disabled and that HADCO knew or reasonably should have known of this disability, Def.'s Mem. in Opp'n to Mot. Summ. J. 3, ECF No. 51,[15] this Court turns to the interpretation of accommodation under the FHAA.

    As a threshold question, this Court must determine whether Mayorga's request to fence off a kennel area for her service animal is an "accommodation" under the FHAA. This Court

---

[14] 42 U.S.C. § 3604(f)(3) provides, in relevant part:

> **(A)** a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises except that, in the case of a rental, the landlord may where it is reasonable to do so condition permission for a modification on the renter agreeing to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted.

> **(B)** a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling; or

[15] To the extent that HADCO only stipulates at this stage in the proceeding, this Court also finds that Mayorga is disabled and that HADCO knew or reasonably should have known of her disability. Mayorga received Social Security disability insurance benefits (DIB) from 1994 until 2010. Decl. of Joy Mayorga 1, 5–6, ECF No. 42. This receipt of DIB benefits, in tandem with various letters from Dr. Black, *see, e.g.*, Decl. of Fred Black M.D. 2, 13, ECF No. 39, establishes disability and that HADCO knew or reasonably should have known of that disability under the FHAA, Section 504, and ORS § 659A.145. Accordingly, this Court **GRANTS** summary judgment to BOLI and Mayorga as to these two prongs.

interprets the FHAA's accommodation provisions with the specific goals of the FHAA in mind: "to protect the right of handicapped persons to live in the residence of their choice in the community," and "to end the unnecessary exclusion of persons with handicaps from the American mainstream." *City of Edmonds v. Washington State Bldg. Code Council*, 18 F.3d 802, 806 (9th Cir. 1994) (citation omitted).

An accommodation under the FHAA "may indeed result in a preference for disabled individuals over otherwise similarly situated nondisabled individuals" and "may adjust for the *practical impact* of a disability, not only for the immediate manifestations of the physical or mental impairment giving rise to the disability." *Giebeler*, 343 F.3d at 1150 (citation omitted) (emphasis added).

On August 26, 2008, HADCO accommodated Mayorga's immediate manifestations of physical impairment by authorizing her to bring home a service dog that exceeded HADCO's pet weight and size restrictions. *See* Decl. of Stephanie M. Parent 5, ECF No. 45-2. However, HADCO subsequently refused to permit Mayorga to fence off a kennel area for that same animal. *See, e.g., id.* at 9; *id.* at 5, ECF No. 45-1.

A service animal, like any other assistance device, may require an additional accommodation to enable its effective use. For example, in an analogous situation, an employer may be required to "provide a ramp or widen a door so that an employee may use his wheelchair to travel from one part of the building to the other." *McDonald v. Dep't of Envtl. Quality*, 214 P.3d 749, 760 (Mont. 2009). Such an additional accommodation is an accommodation to the disabled person using the service animal, not to the service animal itself. Accordingly, this Court recognizes that "accommodation" under the FHAA is broad enough to capture a request for a fenced kennel area for a service animal as an adjustment for the *practical impact* of an

14 – OPINION AND ORDER

individual's disability. *Cf. U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 397–98 (2002) (recognizing that, under the ADA, a request for an exception under a company's seniority system could constitute a reasonable accommodation).

Because this Court concludes that Mayorga's request to fence off a kennel area is a request for an accommodation, she is entitled to receive that request "*if* the adjustment both 'may be necessary to afford [her] equal opportunity to use and enjoy a dwelling' and was 'reasonable' within the meaning of that statute." *Giebeler*, 343 F.3d at 1155 (emphasis in original). This Court looks to causation and reasonableness under the FHAA.

## A. Causation

"To prove an accommodation is necessary, [plaintiff] must show that, but for the accommodation, [she] likely will be denied an equal opportunity to enjoy the housing of [her] choice." *Giebeler*, 343 F.3d at 1155. Put differently, "[w]ithout a causal link between defendant['s] policy and plaintiff's injury, there can be no obligation on the part of defendant[] to make a reasonable accommodation." *United States v. Cal. Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1381 (9th Cir. 1997) (Mobile Home II).

Mayorga's main physical impairment is pain caused by her lumbar disk degeneration and facet osteoarthritis. Decl. of Joy Mayorga 2, ECF No. 42. Mayorga's pain is aggravated by bending, stooping, and walking. *Id*. Asia, Mayorga's service animal, is primarily used for stability support within her home. For example, Asia assists Mayorga in traveling up and down stairs, and walks alongside her in case Mayorga loses her balance. Def.'s Mot. Summ. J. 36–37, ECF No. 36-2. If Mayorga falls, she is able to push off and/or be pulled by Asia to get off the floor. *Id*. 37–39. Asia generally does not accompany Mayorga to the grocery store, doctor's

office, church, or her great grandchild's school. *Id*. at 42–43. Mayorga does, however, infrequently walk Asia on a leash around the block, to the mail box, and to the office. *Id*. at 41.

On August 27, 2008, Mayorga sought permission to fence off a kennel area[16] for her service animal. Mayorga, throughout extended correspondence with HADCO, *see, e.g.*, Decl. of Stephanie M. Parent 7, ECF No. 45-2, indicated that her disability interfered with her ability to adequately exercise her service animal and to let her service animal out to relieve itself. In her most recent declaration, Mayorga contended that she is bedridden for "days" "several times a year" because of her pain and, when not bedridden, experiences pain when she uses the tether[17] recommended by HADCO. Decl. of Joy Mayorga 2–3, ECF No. 42.

These statements describing pain appear to meet the causation requirement. However, this Court, having reviewed the record, is able to draw material inferences adverse to Mayorga's credibility. For example, in April 2014, during Mayorga's deposition, she indicated that she had no difficulty attaching her service animal's leash, but did have difficulty attaching the tether because the mechanism itself was rusted. *See* Def.'s Mot. Summ. J. 45, ECF No. 36-2 ("Q. The difficulty that you have with it is that it's rusted out? A. Yeah."). Moreover, Mayorga requested and/or attempted to erect a fence in the same general location on three separate occasions independent of her disability, *see, e.g.*, *id*. at 53, and she provided HADCO with an evolving explanation of her need for the accommodation, *compare supra* note 9, *with* Decl. of Joy Mayorga 3, ECF No. 42. Accordingly, this Court DENIES summary judgment on this issue and finds that the better course would be to proceed to a full trial because a fuller record will afford a

---

[16] For purposes of this motion, this Court assumes that Mayorga and BOLI seek the original less intrusive request for a fenced off kennel area. *Compare* Decl. of Stephanie M. Parent 54, ECF No. 45-1 (requesting a fence with dimensions 9 feet by 35 feet), *with* Def.'s Mot. Summ. J. 30, ECF No. 36-1 (requesting a fence with dimensions 20 feet by 36 feet).

[17] Mayorga currently uses a 20-foot tether attached to a metal post which has been pounded into the ground near the back of her unit. Def.'s Mot. Summ. J. 57, ECF No. 36-2.

more substantial basis for decision. *See Anderson*, 477 U.S. at 255 ("Neither do we suggest that . . . the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial." (citation omitted)).

**B. Reasonableness**

"Ordinarily, an accommodation is reasonable under the FHAA when it imposes no fundamental alteration in the nature of the program or undue financial or administrative burdens." *Giebeler*, 343 F.3d at 1157 (citations and internal quotation marks omitted). Plaintiff "need only show that an accommodation 'seems reasonable on its face, *i.e.*, ordinarily or in the run of cases." *Id*. at 1156 (quoting *Barnett*, 535 U.S. at 401). "Once the plaintiff has made this showing, the defendant[] then must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." *Barnett*, 535 U.S. at 402.

This Court, having reviewed the evidence of record, is unable to determine whether Mayorga's request is reasonable on its face and finds that the better course would be to proceed to a full trial because a fuller record will afford a more substantial basis for decision.[18] Unlike in *Barnett*, the record before this Court is relatively limited and subject to extensive credibility disputes. For example, this Court is unable to make any type of credible finding as to the adequacy of Asia's training. *See* Def.'s Mot. Summ. J. 27, ECF No. 36-2 ("Q. When you were a professional dog trainer, did you ever train animals to be service animals . . . . A. No."). Asia's capabilities as an assistance device clearly relate to the need and reasonableness of Mayorga's requested service animal care accommodation. *See McDonald*, 214 P.3d at 760 ("[T]he functional capability of [plaintiff's] assistive device relates to the reasonableness of the necessary

---

[18] This Court is reluctant to make a ruling on such a limited record because of the potential implications for service animal care accommodation.

accommodation.""). As to credibility, this Court notes that Mayorga's physical limitations directly correspond to the reasonableness of an accommodation request. Having reviewed the evidence, this Court is able to draw material and adverse credibility inferences that also preclude summary judgment. *See, e.g.*, *supra* § I (A); *infra* § II; *compare* Def.'s Mot. Summ. J. 24, ECF No. 36-1 (requesting to bring Asia home for a trial period prior to purchase), *with id.* at 25, 28, ECF No. 36-2 (describing circumstances in which Mayorga obtained Asia). Accordingly, this Court DENIES summary judgment on this issue.

## II. Interactive Process

Mayorga contends that HADCO violated the FHA, 42 U.S.C. § 3604, by failing to engage in an "interactive process" to identify an adequate accommodation. Pl. Intervenor's Mot. Partial Summ. J. 31–34, ECF No. 37. In response, HADCO directs this Court's attention to correspondence and communications between HADCO and Mayorga. Def.'s Mem. in Opp'n to Mot. Summ. J. 16–17, ECF No. 51.

The FHA requires a housing provider to make a reasonable accommodation when such an accommodation "may be necessary to afford persons with disabilities an equal opportunity to use and enjoy a dwelling." Joint Statement of the Dep't of Housing & Urban Dev. & the Dep't of Justice, *Reasonable Accommodations Under the Fair Housing Act* 6 (May 17, 2004) (Joint Statement 2004). If, however, a request for reasonable accommodation is not reasonable or if there is not a disability-related need for the accommodation, a housing provider may deny a request for reasonable accommodation. *Id.* at 7. Upon denial, at least to the extent that a request is denied because it is unreasonable, a housing provider "*should* discuss with the requester whether there is an alternative accommodation that would effectively address the requester's disability-related needs." *Id.* (emphasis added). This discussion, i.e., "interactive process," "is

18 – OPINION AND ORDER

helpful to all concerned because it often results in an effective accommodation for the requester that does not pose an undue financial and administrative burden for the provider." *Id.*

Mayorga, in reliance on *Humphrey v. Mem'l Hospitals Ass'n, Inc.*, 239 F.3d 1128, 1137–38 (9th Cir. 2001),[19] contends that HADCO failed to "propose alternatives that demonstrate a 'good faith exploration of possible accommodations.'" Pl. Intervenor's Mot. Partial Summ. J. 33, ECF No. 37. This Court is not persuaded.

As identified in *Humphrey*, "[t]he interactive process requires communication and good-faith exploration of possible accommodations . . . and *neither side* can delay or obstruct the process." 239 F.3d at 1137 (emphasis added). In other words, if a party delays or obstructs the interactive process, that party is not acting in good faith. *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996). Good faith, particularly when the record is replete with ongoing communication between Mayorga and HADCO, *see, e.g.*, Decl. of Stephanie M. Parent 5, 9–10, ECF No. 45-1, is heavily dependent upon the respective credibility of the parties. This Court is able to draw material conflicting inferences from the evidence. For example, during deposition, Mayorga asserted that she thought HADCO had no right to talk to her doctor when she made a request for a disability accommodation. Def.'s Mot. Summ. J. 62, ECF No. 36-2; *see also supra* § I (discussing Mayorga's credibility). This assertion, however, as discussed *infra* § III, was incorrect under the circumstances. Likewise, as to HADCO, a more tailored release was never actually sent to Mayorga despite the availability of such a release. *See* Decl. of Stephanie M. Parent 2–4, ECF No. 45-1. Because of such credibility disputes, this Court finds that there is

---

[19] *Humphrey* is an American with Disabilities Act (ADA) case. Mayorga cites only a single FHA case for the proposition that failure to engage in the interactive process is an independent cause of action under the FHA. *See Book v. Hunter*, Civ. No. 1:12–cv–00404–CL, 2013 WL 1193865, at *4 (D. Or. Mar. 21, 2013) ("[U]nder the FHA [defendants] were required to engage in an interactive process.").

reason to believe that the better course would be to proceed to a full trial. *See Anderson*, 477 U.S. at 255. Accordingly, summary judgment is DENIED as to this claim.

## III. Medical Inquiry

Mayorga contends that HADCO made an impermissible medical inquiry under the FHA, 42 U.S.C. § 3604, and ORS § 659A.145, OAR 839-005-0220(2)(c)(A). Pl. Intervenor's Mot. Partial Summ. J. 38, ECF No. 37. In response, HADCO argues that it was authorized to seek additional information and, to the extent that it mistakenly submitted an incorrect release form to Mayorga, that form was not returned to or used by HADCO. Def.'s Mem. in Opp'n to Mot. Summ. J. 15, ECF No. 51.

The FHAA, similar to its Oregon statutory equivalent, allows a housing provider, under certain circumstances, to make a tailored inquiry in order to verify whether a sought accommodation or modification is necessary because of a disability. *See* Joint Statement 2008 at 5–6; Joint Statement 2004 at 12–14; OAR 839-005-0220(2)(c)(B).[20] Put differently, if "the need for the accommodation is not readily apparent or known, the provider may request only information that is necessary to evaluate the disability-related need for the accommodation." Joint Statement 2004 at 13; *see* Joint Statement 2008 at 5; OAR 839-005-0220(2)(c)(B). The parties dispute: (1) whether the need for accommodation was "readily apparent or known" and (2) whether defendant requested information that was not necessary to evaluate the disability-related need for accommodation. This Court looks to the record.

Mayorga, having obtained and received approval for her dog in August 2008, first sought permission to fence off a kennel area on August 27, 2008. Decl. of Stephanie M. Parent 7, ECF

---

[20] OAR 839-005-0220(2)(c)(B) provides: "If a disability or a disability-related need for a requested accommodation is not readily apparent or otherwise known, the provider may request only information that is necessary to evaluate the disability-related need for the accommodation."

No. 45-1; *supra* note 9. This initial request was based upon Dr. Black's 2005 recommendation that it would be "beneficial" to Mayorga's health if she "liv[ed] with and car[ed] for a dog." Decl. of Stephanie M. Parent 52, ECF No. 45-1. Dr. Black recommended a "large, very sturdy dog that is at least eight months old." *Id*. This request also described the sought fenced off area, *see supra* note 9, and was subsequently identified as a "disability accommodation," Decl. of Stephanie M. Parent 8, ECF No. 45-1.

On September 11, 2008, Kohler denied Mayorga's request as articulated, but approved Mayorga's use of a portable dog kennel. Decl. of Stephanie M. Parent 5, ECF No. 45-1. The following day, Mayorga indicated that the portable dog kennel did "not meet [her] needs." *Id*. at 9. Mayorga specified that: (1) her dog needed more room than the kennel provided; (2) her disability prevented her from walking her dog as much as she required; (3) her dog, when tethered unsupervised, was teased and approached by third-parties; and (4) the portable dog kennel was prohibitively expensive. *Id*.

On September 13, 2008, Mayorga reiterated that the portable dog kennel was "totally inappropriate." *Id*. at 7, ECF No. 45-2. Mayorga elaborated that "just letting the dog outside for fresh air, exercise and some 'off duty' time can present physical problems." *Id*.

Kohler, despite denying Mayorga's request for reconsideration on September 15, 2008, *id*. at 9, continued to consider Mayorga's request for accommodation. On September 29, 2008, Kohler sent Mayorga a medical release in order to "obtain information from Dr. Black regarding [her] request for a reasonable accommodation." *Id*. at 10, ECF No. 45-1. That medical release sought "any and all information pertinent to [Mayorga's] occupancy" from "employers, public, and private agencies, individuals, previous and current landlords, financial institutions, and

21 – OPINION AND ORDER

services." *Id*. at 11. The release further specified that "this information is being exchanged with: Fred Black." *Id*.

On October 22, 2008, Mayorga indicated that she would not sign the release because she thought the document was "illegal and [an] inappropriate request." *Id*. at 14.

On October 28, 2008, Kohler acknowledged Mayorga's disclosure concerns and reiterated that she "only need[ed] to verify the need for your request in connection with your disability." *Id*. at 13. Kohler informed Mayorga that Kohler would provide a more tailored release form.

On October 31, 2008, Kohler received a letter from Dr. Black. *Id*. at 15. Dr. Black opined that "the best solution for Ms. Mayorga" is "to allow her to be able to just open the door and let the dog out." *Id*. Dr. Black noted that Mayorga's health can confine her to bed most of the day; "interfere[ing] with her ability to take the dog out on a leash, even just long enough for the dog to relieve itself." *Id*. at 15.

On November 3, 2008, Kohler reiterated her need for a medical release. *Id*. at 16–17. Mayorga refused and subsequently indicated that the recent letter from Dr. Black was sufficient. *Id*. at 18.

This Court, having reviewed the record, declines to find that Mayorga's need for the sought accommodation/modification was "readily apparent or known." On August 26, 2008, Kohler approved Mayorga's reasonable accommodation service animal request. *Id*. at 5, ECF No. 45-2. The following day, Mayorga sought permission to modify her unit by fencing in an area as a kennel. *Id*. at 7, ECF No. 45-1. In support of her modification request, Mayorga subsequently explained that her disability prevented her from sufficiently walking her dog; that her dog, when left unsupervised on the tether, was teased and approached by third-parties; and

22 – OPINION AND ORDER

more broadly, that letting her dog outside for exercise "can present physical problems." *Id*. at 9; *Id*. at 7, ECF No. 45-2. These statements, particularly when considered in light of Mayorga's previous attempts to build a similar fence for non-disability reasons, *see, e.g.*, Def.'s Mot. Summ. J. 27, ECF No. 36-1, did not make her need for the modification for her service animal either "readily apparent" or "known."

Dr. Black subsequently submitted a letter elaborating on Mayorga's need for the modification for her service animal. This letter explained that Mayorga had days in which she could barely walk. Decl. of Stephanie M. Parent 15, ECF No. 45-1. These days "interfere[d] with her ability to take the dog out on a leash, even just long enough for the dog to relieve itself." Dr. Black opined that the "best solution" involved Mayorga *walking* to the door, *opening* the door, and letting the dog out. *Id*.

Mayorga contends that these communications, particularly Dr. Black's letter in October, precluded Kohler's need for additional information. This Court is not persuaded. Dr. Black's submission did not discuss any of the alternatives proposed by Kohler (i.e., a third-party animal walker, a more suitable assistance animal, and/or a temporary tether) and did not enable HADCO to verify and/or clarify Mayorga's mobility constraints. Dr. Black opined that the "best solution" for Mayorga on her bedridden days involved her *walking* to and *opening* the back door. If Mayorga was capable of walking to and opening the door under the "best solution," there was also a reasonable possibility that she was capable of using a temporary tether near the door.

As to the release provided September 29, 2008, Mayorga contends that Kohler sought "excessive information." Pl. Intervenor's Mot. Partial Summ. J. 30 n. 6, ECF No. 37. This Court agrees that the release was clearly defective. *See, e.g.*, Decl. of Stephanie M. Parent 11, ECF No. 45-1 (authorizing HADCO to seek "any and all information pertinent to [Mayorga's] occupancy"

23 – OPINION AND ORDER

from "employers . . . individuals . . ."). However, this defective release was neither returned to HADCO nor used by HADCO to request information from a third-party. In fact, Kohler acknowledged the defect and offered to provide a more tailored release, while repeatedly emphasizing that HADCO only intended to verify the need for Mayorga's request in connection with her disability. Because HADCO was entitled to seek verification, but did not actually seek information under the defective release, HADCO is GRANTED summary judgment as to these claims.

## CONCLUSION

For these reasons, defendant's motion for summary judgment, ECF No. 36, is GRANTED IN PART and DENIED IN PART, plaintiff intervenor's motion for partial summary judgment, ECF No. 37, is GRANTED IN PART and DENIED IN PART, and plaintiff's motion for summary judgment, ECF No. 44, is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

DATED this 15th day of October, 2014.

_____
**Michael J. McShane**
**United States District Judge**

24 – OPINION AND ORDER